# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

*Plaintiff,*

vs.

Case No. 14-cr-10194-01-EFM

JOSEPH ANTHONY RANSOM,

*Defendant.*

## MEMORANDUM AND ORDER

This matter comes before the Court on Defendant Joseph Anthony Ransom's motion to vacate, set aside, or correct his sentence under 18 U.S.C. § 2255, and his addendum thereto. Defendant argues that (1) the Court violated his Sixth Amendment right to self-representation, both by letting him proceed pro se in violation of *Faretta v. California*,[1] and by later revoking his right to represent himself, (2) he received ineffective assistance of counsel from his trial counsel and appellate counsel, (3) the Court erred in instructing the jury regarding the elements of Count III, possession of a firearm in furtherance of a drug-trafficking crime, and (4) the jury was not presented with sufficient evidence to convict Defendant of possession of a firearm in furtherance of a drug-trafficking crime. For the reasons explained below, the Court denies Defendant's motion to vacate (Doc. 215) and denies Defendant's addendum to his motion to vacate (Doc. 228).

---

[1] 422 U.S. 806 (1975).

# I.    Factual and Procedural Background

In December 2014, a grand jury issued an indictment charging Defendant with one count of manufacturing approximately 181 marijuana plants, one count of possessing 100 or more marijuana plants with the intent to distribute, and one count of possession of firearms in furtherance of a drug-trafficking crime.[2]  At his arraignment and detention hearing on December 17, 2014, Defendant sought to waive his right to counsel and to proceed pro se.  U.S. Magistrate Judge Kenneth Gale asked Defendant numerous questions, including whether he had studied law (Defendant responded "some," on an informal basis), represented himself in a criminal case before the current matter (Defendant stated that he had in the corollary state case), or studied the Federal Rules of Evidence or Federal Rules of Criminal Procedure (Defendant stated that he had not, but that he will "figure them out" and "will learn" them).  Magistrate Judge Gale informed Defendant of the charges against him, of the significant punishment Defendant faced if convicted of the charges, that the Court would not be able to give him legal advice if he chose to proceed pro se, and that the Court believed that a trained attorney would defend Defendant better than he could defend himself.[3]  Despite the difficulties in self-representation and potential penalties associated with the charges, Defendant stated that he wished to represent himself and that it was his voluntary decision to do so.  Magistrate Judge Gale found that Defendant knowingly and voluntarily waived

---

[2] In February 2015, a superseding indictment added one count of felon in possession of a firearm.

[3] At Defendant's initial appearance, U.S. Magistrate Judge Karen Humphrey also engaged in a discussion with Defendant regarding his desire to represent himself.  Magistrate Judge Humphrey provided Defendant with information to consider so that he could better understand whether it was in his best interest to waive his right to counsel.

his right to counsel and appointed standby counsel, Steven Gradert, to assist Defendant unless and until later dismissed by this Court.

On February 9, 2015, this Court undertook an inquiry of Ransom regarding his request to proceed pro se, determined that Defendant did not have the apparent ability to understand the charges against him or to assist in his defense, and ordered a psychological examination of Defendant to determine his competency to understand the charges against him and to represent himself. The Court continued the case pending the result of the psychological evaluation, which resulted in Defendant's February 24, 2015, trial date being rescheduled for July 21, 2015.

In April 2015, Defendant's standby counsel moved to withdraw. Shortly thereafter, the Court received the results of Defendant's psychiatric examination. Although the report noted that Defendant declined to participate in the evaluation, it ultimately concluded that, based on the available information, there was no evidence to suggest that Defendant suffered a mental disease or defect rendering him unable to understand the nature and consequences of the proceedings against him, to assist in his defense, or to waive his right to counsel, and that Defendant was competent to stand trial.

The Court held a hearing to address Defendant's competency examination and standby counsel's motion to withdraw on May 7, 2015. During the hearing, Defendant constantly interrupted the Court, objected to the Court's authority, and refused to follow the Court's orders. He also refused to answer questions from the Court, including how Defendant wanted the Court to address him,[4] whether he objected to the Bureau of Prison's competency report, whether he was

---

[4] Defendant objected to the Court referring to him as Mr. Ransom, and would not answer the Court's question of whether Defendant would be amenable to the Court referring to him as "Joseph of the Ransom family" or anything other than the "beneficiary."

familiar with the charges against him, whether he understood the charges against him, and whether he wished to represent himself in this case. Ultimately, the Court concluded that Defendant would not allow the Court to determine whether he understood the charges against him,[5] the potential penalties if convicted of the charges against him, or the risks of self-representation, and that Defendant would not cooperate with the rules of the Court. After the Court stated that it could not make these determinations regarding Defendant's understanding, Defendant stated "I do not understand anything. I do not stand under you. I over-stand you. Prove the cause of action." Accordingly, the Court denied Defendant's right to proceed pro se, denied standby counsel's motion to withdraw, and appointed standby counsel as Defendant's trial counsel.

Defendant's disruptive behavior did not cease after the Court denied Defendant his right to proceed pro se. Rather, he demanded immediate release and continued to disobey the Court's orders after being warned that a failure to do so would result in him being found in contempt of court. Defendant did not heed the Court's warnings, and ultimately, the Court held Defendant in contempt of court and had him removed.

After standby counsel took over as trial counsel, counsel sought permission to file and filed a motion to suppress out of time. In it, counsel requested an order suppressing all evidence seized from the residence in Ellis County that was recovered as a result of the search warrant issued on or about September 25, 2014. The motion asserted that the affidavit lacked probable cause, relied on stale information, and lacked particularity. It further argued that the affidavit to search Defendant's residence did not mention any evidence or suggest that firearms or weapons would

---

[5] Indeed, at one point Defendant objected stating, "[t]here are no charges against me. There's no – There's no cause of action. . . ."

be located in the residence and the information contained therein was insufficient to provide probable cause to seize firearms—in other words, that the search exceeded the scope of the warrant. Trial counsel also filed a motion to dismiss the indictment, arguing that Defendant had been deprived of his due process rights and right to a speedy trial.

The Court denied Defendant's motions and the case proceeded to a jury trial, commencing on July 21, 2015. The jury returned a verdict on July 23, 2015, finding Defendant guilty on all counts. On November 12, 2015, the Court sentenced Defendant to 121 months' imprisonment, to be followed by five years of supervised release.

Defendant timely appealed his conviction and sentence to the Tenth Circuit.[6] His appeal raised two issues: "a challenge to the sufficiency of the evidence supporting his conviction for possession of firearms in furtherance of a drug-trafficking crime, and an argument that his statutory right to a speedy trial was violated." On May 11, 2017, the Tenth Circuit issued an order affirming Defendant's conviction and sentence.

Defendant filed the current § 2255 motion on February 26, 2018. After receiving an extension, the Government timely filed a response on April 30, 2018. On May 4, 2018, the Court received a notice signed by Defendant three days earlier informing the Court of Defendant's new address and requesting an extension of time on any filings that may be due before June 1, 2018. On June 28, 2018, the Government served a copy of its April 30 response to Defendant at his updated address, and on the following day the Court issued an order allowing Defendant until July

_____

[6] While Defendant's appeal was pending, Defendant filed a motion, purportedly under Fed. R. Civ. P. 60, alleging that Magistrate Judge Gale improperly granted his motion to proceed pro se without holding a *Faretta* hearing. The Court denied the motion on jurisdictional grounds stating: "this Court is without jurisdiction to consider the motion he brings under Rule 60 of the Federal Rules of Civil Procedure. Furthermore, even if the Court were to consider Ransom's motion as one brought under § 2255, consideration would be improper at this time . . ." Defendant later appealed this order and the Tenth Circuit affirmed.

20, 2018, to file any reply he may wish to file. On July 9, 2018, the Court received a "Response to Order of the Court" from Defendant indicating that he believed his prior § 2255 motion had jurisdictional conflicts and requesting that the Court accept his "re-written" § 2255 motion as an addendum to his filed motion. The Government has not responded to Defendant's addendum and Defendant's motion to vacate is now ripe.[7]

Defendant asserts various arguments in support of his motion, including that the Court violated his right to self-representation (both in allowing him to proceed pro se initially, and later by revoking his right to proceed pro se), that he received ineffective assistance of counsel, and that his conviction for possession of a firearm in furtherance of a drug-trafficking crime must be reversed due to improper jury instructions and insufficient evidence to sustain the conviction.

## II.    Legal Standard

Title 28 U.S.C. § 2255 allows "[a] prisoner in custody . . . claiming the right to be released" to petition the Court to vacate, set aside, or correct a sentence on various grounds, including where "the sentence was imposed in violation of the Constitution or laws of the United States."[8] When alleging constitutional error, "the petitioner must establish an error of constitutional magnitude which had a substantial and injurious effect or influence on the verdict."[9] When alleging non-constitutional error, "the petitioner must show a fundamental defect in the proceedings resulting in a complete miscarriage of justice or an error so egregious that it amounted to a violation of due

---

[7] The Government's original response argued only that this Court lacked jurisdiction given Defendant's appeal from this Court's denial of his motion to dismiss indictment, filed after the Tenth Circuit's denial of Defendant's direct appeal. The Tenth Circuit has now affirmed the Court's prior order; accordingly, the Court declines to address the Government's jurisdictional arguments.

[8] 28 U.S.C. § 2255(a).

[9] *United States v. Johnson*, 995 F. Supp. 1259, 1261 (D. Kan. 1998) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)).

process."[10]  The petitioner is entitled to a hearing on his motion, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."[11]

### III. Analysis

**A.      Defendant's right to self-representation**

"The Sixth Amendment provides criminal defendants with the right to represent themselves," as well as the right to counsel.[12]  The Tenth Circuit has recognized that these rights are in tension with each other.[13]  "The right to counsel helps to assure a defendant a fair trial" and serves "both the individual and collective good;" whereas the right to proceed pro se "ordinarily undermines the defendant's chance of a favorable outcome," and "protects only individual interests."[14]  This "results in 'constitutional primacy' of the right to counsel."[15]  The Tenth Circuit recognizes that, due at least in part to the primacy of the right to counsel, "a defendant wanting to proceed pro se must satisfy four requirements."[16]  These include:

> First, the defendant must "clearly and unequivocally" inform the district court of his intention to represent himself.  Second, the request must be timely and not for the purpose of delay.  Third, the court must conduct a comprehensive formal inquiry to ensure that the defendant's waiver of the right to counsel is "knowingly and intelligently" made.  Finally, the defendant "must be able and willing to abide by rules of procedure and courtroom protocol."[17]

---

[10] *Id*. (citing *Reed v. Farley*, 512 U.S. 339, 353-54 (1994)).

[11] 28 U.S.C. § 2255.

[12] *United States v. Simpson*, 845 F.3d 1039, 1046 (10th Cir. 2017) (citing *Faretta v. California*, 422 U.S. 806, 819-20 (1975)).

[13] *Id*.

[14] *Id*. (quotations omitted).

[15] *Id*. (quoting *United States v. Smith*, 413 F.3d 1253, 1280 (10th Cir. 2005)).

[16] *Id*.

[17] *Id*. (quoting *United States v. Tucker*, 451 F.3d 1176, 1180 (10th Cir. 2006)) (internal quotations omitted).

Further, "[i]n evaluating whether the defendant satisfied these requirements, we 'indulge in every reasonable presumption against waiver.' "[18]

Defendant alleges three violations of his right to self-representation. First, he alleges that Magistrate Judge Gale violated his rights under *Faretta* by granting Defendant's request to proceed pro se without conducting a *Faretta* colloquy. Second, he asserts that the Court improperly allowed him to continue representing himself after the Court conducted a *Faretta* colloquy and determined that Defendant's competency was at issue. Third, Defendant argues that the Court violated his Sixth Amendment right to self-representation by denying him the ability to represent himself.[19] None of Defendant's allegations support his claim to relief.

First, the transcript of Defendant's detention hearing and arraignment before Magistrate Judge Gale demonstrates that Magistrate Judge Gale conducted a proper *Faretta* colloquy before granting Defendant's request to proceed pro se. The U.S. Supreme Court has noted that no "formula or script" exists for judges to follow when a defendant seeks to waive his right to counsel.[20] Rather, the defendant "should be made aware of the dangers and disadvantages of self-representation," and must knowingly and voluntarily waive his right to counsel.[21] Whether a defendant has made an "intelligent" choice to forego counsel depends "on a range of case-specific factors, including the defendant's education or sophistication, the complex or easily grasped nature

---

[18] *Id.* (quoting *Brewer v. Williams*, 430 U.S. 387, 404 (1977), and citing *Smith*, 413 F.3d at 1280).

[19] Defendant submits that these errors are structural in nature and do not require him to demonstrate prejudice, but instead require automatic reversal of his conviction. Because the Court rejects Defendant's arguments that his Sixth Amendment right to self-representation was violated, the Court need not address this issue.

[20] *Iowa v. Tovar*, 541 U.S. 77, 88 (2004).

[21] *Id.* (quotation omitted).

of the charge, and the stage of the proceeding."[22] "At earlier stages of the criminal process, a less searching or formal colloquy may suffice."[23]

In the early stages of this case—at Defendant's arraignment and detention hearing—Magistrate Judge Gale explained the charges against Defendant, explained the potential punishment Defendant faced if found guilty on the charges, inquired into Defendant's ability to represent himself, and advised Defendant that he would likely fare better with appointed counsel. The charges against Defendant did not involve complex matters and although Defendant had little experience representing himself, he indicated that he would learn the applicable rules governing his case. Magistrate Judge Gale found that Defendant knowingly and voluntarily waived his right to counsel, and appointed standby counsel. Defendant does not argue that he did not waive his right to counsel knowingly or voluntarily; nor does he explain how Magistrate Judge Gale violated *Faretta* or identify what further steps should have been taken prior to granting his request to proceed pro se. The record of this case conclusively shows that Magistrate Judge Gale did not violate *Faretta* and did not improperly allow Defendant to represent himself.

The record also dispels Defendant's second allegation—that the Court violated *Faretta* by allowing Defendant to continue representing himself after concluding that Defendant's competency was at issue. It conclusively shows that the Court continued the case on February 9, 2015, after it determined that Defendant may not have had the apparent ability to understand the charges against him or to assist in his defense and ordered a psychological examination of Defendant. The Court cancelled the trial scheduled to begin February 24, and did not reschedule

---

[22] *Id.* (citation omitted).

[23] *Id.* (citation omitted).

the trial until after receiving the results of Defendant's competency examination. That Defendant continued to submit filings during the time that his case had been continued does not change the fact that the matter had been continued pending the psychological examination. Thus, the Court did not allow Defendant to represent himself after questioning his ability to do so, instead, the Court merely continued the case, or, in other words, put the case on hold, pending the Bureau of Prisons' report regarding Defendant's competency.

Finally, the Court did not violate Defendant's Sixth Amendment right to self-representation when it revoked his ability to proceed pro se. Defendant's right to proceed pro se is not absolute.[24] Rather, the Court must conduct an "inquiry to ensure that the defendant's waiver of the right to counsel is 'knowingly and intelligently' made," and the Court is not required to allow a defendant to proceed pro se if the defendant will not "abide by rules of procedure and courtroom protocol."[25] Further, if a defendant "deliberately engages in serious and obstructionist misconduct," the Court "may terminate self-representation."[26]

Here, Defendant engaged in disruptive behavior, disregarded the rules of the Court, ignored the Court's orders, refused to answer questions from the Court when the Court sought to determine whether to allow Defendant to proceed pro se, and repeatedly tried to speak over the Court. Ultimately, his behavior resulted in the Court holding him in contempt of court at the May 7, 2015

---

[24] *See Indiana v. Edwards*, 554 U.S. 164, 171 (2008); *United States v. Akers*, 215 F.3d 1089, 1097 (10th Cir. 2000).

[25] *McKaskle v. Wiggins*, 465 U.S. 168, 173 (1984) (recognizing that "an accused has a Sixth Amendment right to conduct his own defense, provided only that he knowingly and intelligently forgoes his right to counsel and that he is able and willing to abide by rules of procedure and courtroom protocol"); *see also Tucker*, 451 F.3d at 1180 (noting that the fourth requirement for properly invoking the right to self-representation is that "the defendant 'must be able and willing to abide by rules of procedure and courtroom protocol' ") (quoting *Smith*, 413 F.3d at 1279).

[26] *Faretta*, 422 U.S. at 834.

hearing.[27]  Defendant does not contest the propriety of the Court's order holding him in contempt

of court, and his obstructionist behavior fits squarely within the type of conduct allowing the Court

to deny a defendant the right to self-representation.  Indeed, Defendant's disregard for the rules

and orders of the Court prohibited the Court from accurately inquiring into whether Defendant

sought to waive his right to counsel knowingly and intelligently as Defendant refused to answer

the Court's questions regarding whether he understood his rights, the charges against him, or the

potential penalties he faced if convicted.  The Court did not violate Defendant's Sixth Amendment

right when it revoked his ability to proceed pro se because Defendant would not allow the Court

to determine whether Defendant knowingly and intelligently waived his right to counsel and

because Defendant's behavior demonstrated that he was not willing and able to abide by the rules

of procedure and courtroom protocol.

**B.      Ineffective Assistance of Counsel**

"The Sixth Amendment guarantees a defendant the effective assistance of counsel at

'critical stages of a criminal proceeding.' "[28]  This includes when a defendant pleads guilty, during

sentencing proceedings, and on the first appeal as of right.[29]  The Court analyzes whether a

defendant received ineffective assistance of counsel under the two-prong test articulated by the

U.S. Supreme Court in *Strickland v. Washington*.[30]  Under this test, Defendant bears the burden of

---

[27] Additionally, although the Court did not hold Defendant in contempt of court during the February 9, 2015, status conference, Defendant demonstrated an unwillingness to abide by the rules of procedure and courtroom protocol during that status conference.  Defendant refused to answer questions from the Court regarding whether Defendant understood that he had a right to an attorney and whether he understood the charges and potential penalties he faced.

[28] *Lee v. United States*, 137 S. Ct. 1958, 1964 (2017) (quoting *Lafler v. Cooper*, 566 U.S. 156, 165 (2012)).

[29] *See id.*; *Evitts v. Lucey*, 469 U.S. 387, 394 (1985); *United States v. Lustyik*, 833 F.3d 1263, 1267 (10th Cir. 2016).

[30] 466 U.S. 668 (1984).

showing that he received ineffective assistance of counsel and "must show [1] that counsel's representation 'fell below an objective standard of reasonableness' and [2] that he was prejudiced as a result."[31] "Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim."[32]

In evaluating whether counsel's representation fell below an objective standard of reasonableness, "substantial deference must be accorded to counsel's judgment."[33] Counsel retains "wide latitude . . . in making tactical decisions," and the Court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."[34] "[T]he defendant bears the burden of proving that counsel's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy."[35] To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[36] "A reasonable probability is a probability sufficient to undermine confidence in the outcome."[37] "This requires that '[t]he likelihood of a different result must be substantial, not just conceivable.'"[38]

---

[31] *Lee*, 137 S. Ct. at 1964 (quoting *Strickland*, 466 U.S. at 688).

[32] *Strickland*, 466 U.S. at 700.

[33] *Premo v. Moore*, 562 U.S. 115, 126 (2011).

[34] *Strickland*, 466 U.S. at 689 (citations omitted).

[35] *Boyle v. McKune*, 544 F.3d 1132, 1138 (10th Cir. 2008) (citations omitted).

[36] *Strickland*, 466 U.S. at 694.

[37] *Cannon v. Trammell*, 796 F.3d 1256, 1271 (10th Cir. 2015) (quoting *Strickland*, 466 U.S. at 694).

[38] *Id*. (quoting *Harrington v. Richter*, 562 U.S. 86, 112 (2011)) (alteration in original).

Defendant identifies three actions that he asserts constitute ineffective assistance of counsel: (1) counsel failed to challenge this Court's denial of Defendant's motion to suppress, (2) counsel failed to conduct pre-trial investigation requested by Defendant, and (3) counsel failed to object to the Court allowing Defendant to continue representing himself after the Court ordered a psychological examination. As explained above, the Court did not violate Defendant's rights when it continued the case pending Defendant's psychological examination; accordingly, counsel's failure to object on this basis did not fall below an objective standard of reasonableness or prejudice Defendant. The Court will address Defendant's remaining two arguments below.

1. *Ineffective assistance of appellate counsel – motion to suppress*

An appellate attorney "need not advance *every* argument, regardless of merit, urged by the appellant," but must "be available to assist in preparing and submitting a brief to the appellate court . . . and must play the role of an active advocate, rather than a mere friend of the court."[39] The process of " 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy."[40] The Supreme Court has recognized that "[l]egal contentions, like the currency, depreciate through over-issue" and the pursuit of multiple errors will often only "dilute and weaken a good case and will not save a bad one."[41] "A brief that raises every colorable issue runs the risk of burying good arguments."[42] Thus, "[e]ffective appellate counsel should not raise every

---

[39] *Evitts*, 469 U.S. at 394 (emphasis in original) (citations omitted).

[40] *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes,* 463 U.S. 745, 751-52 (1983)). Experienced advocates recognize "the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." *Jones*, 463 U.S. at 751-52.

[41] *Jones*, 463 U.S. at 752 (citations omitted).

[42] *Id*. at 753.

nonfrivolous argument on appeal, but rather only those arguments most likely to succeed."[43] "Declining to raise a claim on appeal is not deficient performance unless that claim was plainly stronger than those actually presented to the appellate court."[44]

Defendant alleges that the warrant to search his residence lacked particularity because it included the catch-all language "including but not limited to," and that he received ineffective assistance of counsel by his appellate counsel's failure to appeal on this basis.[45] Defendant admits that the use of the phrase "including but not limited to" "does not always render a warrant defective," and recognizes that the Tenth Circuit has held that such language "does not taint a warrant when the language serves only to modify one or more categories in the list."[46] He argues, however, that here the phrase is used "in connection with the entire warrant, not just particular categories," and thus renders the warrant defective.

The Fourth Amendment states that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and *particularly* describing the place to be searched, and the persons or things to be seized."[47] "The particularity requirement prevents overly general searches, ensuring that searches are confined to evidence relating to particular crimes in which there is

---

[43] *Davila v. Davis*, 137 S. Ct. 2058, 2067 (2017). *See also Loggins v. Cline*, 568 F. Supp. 2d 1265, 1272 (D. Kan. 2008) ("Because an advocate has a duty to support the client to the best of his ability, it may be necessary for counsel to raise only the strongest claims.").

[44] *Davila*, 137 S. Ct. at 2067. *See also Jones*, 463 U.S. at 751 (recognizing that a defendant does not have "a constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points").

[45] On appeal counsel argued that (1) Defendant's right to a speedy trial had been violated and (2) the evidence presented during the trial was insufficient to sustain Defendant's conviction of possession of firearms in furtherance of a drug-trafficking crime.

[46] Doc. 228, p. 15.

[47] U.S. Const. amend. IV (emphasis added).

probable cause."[48]   When analyzing whether a warrant satisfies this requirement, the Court

"consider[s] whether the warrant's description of the items to be searched would enable 'the

searcher to reasonably ascertain and identify the things authorized to be seized.' "[49]   Whether the

particularity requirement is violated when a warrant describes the items to be searched by including

the phrase "including but not limited to" depends on the circumstances.  The Tenth Circuit has

recognized that "[t]he qualifying phrase, 'not limited to,' is frequently included with particular

categories in a warrant," and that in such situations "the 'not limited to' language does not taint

[the] warrant."[50]   However, when the phrase modifies "the entire warrant, not just particular

categories," it may impermissibly broaden the scope of the warrant to allow "officers to search for

any item for any reason."[51]

The September 25, 2014, search warrant at issue here authorized officers to search

Defendant's residence for the following items:

> Marijuana, cocaine, methamphetamine scales, packaging material including
> cellophane, plastic bags and other containers and materials suitable to hold and
> distribute portions of powdered or solid drugs, records of drug transactions and
> personal contacts with suppliers and customers, to include handwritten and
> printed documents, computer hardware and disks and the information contained
> therein, currency and records of bank accounts, brokerage accounts, safe
> deposit boxes and other financial deposits or instruments, records of purchase
> and ownership of unusually expensive items of property, records and
> documents reflecting occupancy and ownership of the residence and
> businesses, including but not limited to mail, telephone and utility bills,
> insurance statements, tax records, mortgage statements and similar documents,

---

[48] *United States v. Dunn*, 719 F. App'x. 746, 749 (10th Cir. 2017) (citing *Voss v. Bergsgaard*, 774 F.2d 402, 404 (10th Cir. 1985)).

[49] *Id.*

[50] *Id.* (citing *United States v. Burgess*, 576 F.3d 1078, 1091-92 (10th Cir. 2009); *United States v. Otero*, 563 F.3d 1127, 1132-33 (10th Cir. 2009); *United States v. Pringle*, 53 F. App'x 65, 70 (10th Cir. 2002)).

[51] *Id.* (citing *United States v. Bridges*, 344 F.3d 1010, 1017-18 (9th Cir. 2003)).

photographs and video tapes showing activities and associates, weapons, records of pager and cellular telephone contracts and billings.

In contrast to Defendant's assertions, the "including but not limited to" phrase does not modify the entire warrant, but instead refers to one specific category—records and documents reflecting occupancy and ownership of the residence and businesses. The search warrant cannot be read to authorize officers to "search for any item for any reason," and is not materially distinguishable from a warrant previously upheld by the Tenth Circuit. In *Pringle*, the Tenth Circuit rejected a particularity argument in a drug-trafficking case where the warrant directed officers to seize "property which may indicate ownership or use of the above described location and vehicles, including, but not limited to letters addressed to the occupants, insurance and registration papers, notes, photos, and clothes that indicate the size, age and sex of the occupants."[52] The Tenth Circuit affirmed the defendant's conviction and noted that "such lists provide the particularity that allows searchers to 'reasonably ascertain and identify the things authorized to be seized,' as required by the Fourth Amendment."[53] Given the similarity between the search warrant at issue in this case and the search warrant in *Pringle*, appellate counsel did not act unreasonably in declining to raise this issue on appeal,[54] and to instead pursue other issues, and regardless, Defendant has not shown that he has been prejudiced by his counsel's alleged failure.[55]

---

[52] 53 F. App'x at 70.

[53] *Id.* (quoting *United States v. Finnigin*, 113 F.3d 1182, 1187 (10th Cir. 1997)).

[54] Defendant's reliance on *Cassady v. Goering*, 567 F.3d 628 (10th Cir. 2009), is misplaced. There, the warrant "did not confine the scope of the search to any particular crime," but instead expressly permitted the search and seizure of "all other evidence of criminal activity."[54]

[55] Defendant also takes issues with the term "other," but as with the phrase "including but not limited to," the term "other" clearly modifies "financial deposits or instruments" and also does not offend the Fourth Amendment. Defendant also argues, without support, that the search warrant was overly broad in scope. Similar search warrants have been upheld by the Tenth Circuit and he has not met his burden to demonstrate that counsel acted unreasonably in failing to appeal the Court's denial of Defendant's motion to suppress.

2.      *Pre-trial investigation*

Defendant asserts that trial counsel failed to conduct pre-trial investigation requested by Defendant, and that counsel's failure to do so denied him a defense, in violation of his Sixth Amendment rights. Defendant identifies five actions he claims counsel should have taken:[56] (1) investigate the reports between dispatch and officers that claimed to be at his residence for a vehicle with invalid tags parked on the property in violation of a city ordinance, (2) review the alleged city ordinance that movant had violated and which allegedly gave officers the right to conduct an investigation at his residence, (3) review pictures of Defendant's vehicle and tags showing current tags, (4) interview USAO witnesses for impeachment purposes, and (5) interview officers involved directly in the case. He claims that these actions "would [have] produced that officers were in fact at the residence under another pretext, not as they claimed in there [sic] police reports, violating movant's rights, and falsifying statements that gave them a right to be conducting a investigation on the property that had no nexus to the crime charged."

Defendant's argument on this point is conclusory and largely incomprehensible, perhaps explaining why this argument did not appear in his July 5, 2018, addendum to his motion to vacate.[57] A review of the record, however, leads the Court to believe that Defendant takes issue with his counsel's alleged failure to investigate the reason why police officers approached Defendant's residence on September 25, 2014, at approximately 9:00 a.m. Defendant appears to focus on this because when the officers knocked on his door and spoke with him, they smelled raw

---

[56] Defendant, somewhat ironically, prefaces his list of actions he alleges that counsel should have taken with the phrase "included but not limited to." To the extent Defendant alleges counsel should have taken some unidentified action, he cannot support an ineffective assistance of counsel claim on his counsel's failure to take unidentified actions.

[57] Defendant's addendum repeated many of the arguments asserted in his original motion to vacate.

marijuana and sought a warrant to search his house.[58]  It appears that Defendant is arguing that the officers approached his house, not due to illegal vehicle tags, but for an invalid reason, and thus, the officers conducted an unauthorized search when they knocked on Defendant's door and spoke with him.

The files and record of this case conclusively show that Defendant cannot satisfy his burden to show ineffective assistance of counsel.  Defendant cannot meet his burden to show prejudice, which requires a "substantial" likelihood that "the result of the proceeding would have been different" if counsel further investigated the stated reason for the officers' presence at Defendant's residence.[59]  As a factual matter, the record directly contradicts Defendant's assertion that investigation of the tags on the vehicle would have shown "current tags," and thus the officers must have been at his residence for a different reason.  Defendant does not provide any evidence that his tags were current, nor does he allege that his tags complied with Kansas law[60] or the City of Ellis ordinance at issue (rather, he implies that there is no such ordinance[61]).  During trial,

---

[58] For background, the probable cause affidavit supporting the search warrant for Defendant's residence recounts three events.  It describes two trash pulls from July 30, 2014, and August 6, 2014, that revealed marijuana trimmings, package wrapping and the tobacco insides of Swisher Sweets Cigars, paperwork with Defendant's name on it, and U.S. mail with Defendant's and his co-defendant's names.  And, as relevant here, it states that on September 25, 2014, the Chief of Police for the Ellis Police Department and an Ellis County sheriff deputy attempted to serve a 10-day non-compliance paper regarding a car parked at Defendant's residence.  During this event, the officers smelled the odor of raw marijuana emanating from Defendant's residence.

[59] *Strickland*, 466 U.S. at 694; *Cannon*, 796 F.3d at 1271  (quoting *Harrington*, 562 U.S. at 112).

[60] To the extent Defendant claims that he had "current tags" because they conformed with his view of what a current tag means for someone claiming "sovereign citizen" status, this has no bearing on whether the tags conformed with Kansas law.

[61] A review of the Code of the City of Ellis reflects that it adopts the Standard Traffic Ordinance for Kansas Cities, 2013 Edition. Code of the City of Ellis, Kansas, § 14-101. *See also* K.S.A. 12-3009-3012 (authorizing the incorporation of a standard or model code or ordinance).  While the Court could not confirm the specific language contained in the 2013 edition, the editions immediately before and after the 2013 edition support the Chief of Police's testimony as to what constitutes a violation of the ordinance at issue and Defendant provides no support to the contrary.

-18-

apparently at Defendant's urging,[62] the Chief of Police had the following exchange with defense counsel regarding this issue:

> Q. And what exactly was wrong with the vehicle?
>
> A. The vehicle itself was in violation of city code because our city code requires that if you are not a vehicle dealership or mechanic shop for vehicles and you have vehicles that are in your yard that can be seen or on the street and can be viewed by the public eye, that it must be registered, with current registration with the state of Kansas.
>
> Q. What kind of a tag did it have on it, if any?
>
> A. It had a tag on it -- if I recall correctly, it was a red tag with, I believe, a -- some type of star on it, sir.
>
> Q. Okay. Did it have any meaning at all to you?
>
> . . .
>
> A. What it meant to me is I had -- through research I had seen that it's -- it reflects with some groups of sovereign citizens.
>
> Q. Okay. But you're saying that that wasn't a legal tag, in your point of view?
>
> A. That's correct, yes sir.

Although Defendant's factual assertions lack support, a legal matter, whether Defendant had illegal tags is irrelevant. Rather, the U.S. Supreme Court has clarified that law enforcement officers may approach a home in the hopes of speaking with the resident and may even ask for permission to search the home without offending the Fourth Amendment. It has explained:

> When law enforcement officers who are not armed with a warrant knock on a door, they do no more than any private citizen might do. And whether the person who knocks on the door and requests the opportunity to speak is a police

---

[62] The Government objected when defense counsel asked the Chief of Police whether the tag had any meaning to him, and defense counsel explained, "my client's just been bugging me because he wants me to put in the evidence of the tag," and when asked by the Court what the tag is, defense counsel responded, "[i]t's just about his sovereign citizen status, Judge."

officer or a private citizen, the occupant has no obligation to open the door or to speak.[63]

Indeed, police officers have an "implied license" permitting them "to approach the home by the front path, knock promptly, wait briefly to be received, and then (absent invitation to linger longer) leave."[64] While a Fourth Amendment violation may occur when officers exceed the scope of this implied license,[65] Defendant does not allege that officers exceeded the scope of this implied license; nor does the record support such an assertion.

Defendant points to no evidence, in the record or otherwise, to support his claim that the outcome of the proceedings would have been different if counsel investigated more thoroughly Defendant's tags, the ordinance he allegedly violated, or the reason officers approached his house on September 25, 2014. Nor has Defendant met his burden to show that counsel acted unreasonably in failing to investigate the issue.[66] As Defendant cannot satisfy either prong of the *Strickland* ineffective assistance of counsel test, his request for relief on this basis fails.

---

[63] *Kentucky v. King*, 563 U.S. 452, 469-70 (2011). *See also Florida v. Jardines*, 569 U.S. 1, 8 (2013) ("[A] police officer not armed with a warrant may approach a home and knock, precisely because that is 'no more than any private citizen might do.' ") (quotation omitted); *Whren v. United States*, 517 U.S. 806, 813 (1996) ("Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis."); *United States v. Shuck*, 713 F.3d 563, 567 (10th Cir. 2013) (rejecting argument that officers entered property "under the guise of doing a knock and talk" and that officers conducted an illegal search when officers dropped to his hands and knees to smell a PVC pipe); *United States v. Cruz-Mendez*, 467 F.3d 1260, 1264 (10th Cir. 2006) ("[A] 'knock and talk' is a consensual encounter and therefore does not contravene the Fourth Amendment, even absent reasonable suspicion.") (citations omitted); *United States v. Taylor*, 458 F.3d 1201, 1204 (11th Cir. 2006) ("The Fourth Amendment . . . is not implicated by entry upon private land to knock on a citizen's door for legitimate purposes unconnected with a search of the premises.") (citing *Coolidge v. New Hampshire*, 403 U.S. 443, 466 (1971)). Defendant makes no allegations that the officers did anything other than directly approach his front door, knock on his door, talk to him, and leave.

[64] *United States v. Carloss*, 818 F.3d 988, 998 (10th Cir. 2016) (quotation omitted).

[65] *See id.*

[66] *See supra* n. 63.

**C.** **Defendant's conviction for possession of a firearm in furtherance of a drug-trafficking crime**

Defendant offers two theories for granting his motion based on his conviction for possessing a firearm in furtherance of a drug-trafficking crime. First, he alleges that this Court "erred in its instruction to the jury" regarding the offense and that the Court's "failure to correctly state and clarify the law, encouraged the jury to convict him even if they found he merely possessed the weapons." Second, he challenges the sufficiency of the evidence supporting his conviction. Neither theory has merit.

1. *Jury instructions*

Defendant complains that the Court "failed to instruct the jury on the 'in furtherance' element and 'nexus' element to sustain a § 924(c) conviction beyond a reasonable doubt," and argues that the Court's instructions allowed the jury to find Defendant guilty if they merely found that he possessed the weapons. While Defendant acknowledges that the Court "advised the jury that in order to convict it must find that Petitioner possessed the firearms involved for the purpose of assisting in, promoting, accomplishing, advancing, or achieving the goal or objective of the underlying offense," he asserts that the jury should have been "explicitly instructed that the mere presence of a firearm at the scene was not enough to find the possession 'in furtherance' element of § 924" or "that the government must establish some 'nexus' between the firearms and the underlying drug-trafficking crime." Defendant's allegations directly conflict with the instructions given to the jury, as reflected by the record in this case.

After the close of evidence, the Court provided the jury with instructions, both verbally and in writing. Each juror received a copy of the instructions to reference during deliberations,

and the Court instructed the jurors to read the court's instructions after returning to the jury room

to begin deliberations. Instruction No. 11 included the following:

> The Defendant is charged in Count Three with violating 18 U.S.C. Section 924(c)(1)(A). This law makes it a crime to possess a firearm in furtherance of a drug trafficking crime. . . .
>
> To find the Defendant guilty of this crime you must be convinced that the government has proved each of the following beyond a reasonable doubt:
>
> *First*: the Defendant committed the crime of manufacturing marijuana as charged in Count One of the Indictment, and/or possessing with intent to distribute marijuana, as charged in Count Two of the indictment, both of which are drug trafficking crimes; and
>
> *Second*: the Defendant possessed a firearm in furtherance of this crime.
>
> Possession "in furtherance of" means for the purpose of assisting in, promoting, accomplishing, advancing, or achieving the goal or objective of the underlying offense. Mere presence of a firearm at the scene is not enough to find possession in further of a drug trafficking crime, because the firearm's presence may be coincidental or entirely unrelated to the underlying crime. . .

The Court not only verbally advised the jury that "mere presence of a firearm at the scene

is not enough," but also provided the jury with a written copy of this statement and instructed the

jury to review it. Defendant's current assertion directly conflicts with and lacks any merit in light

of the record below. Defendant has failed to demonstrate any error, let alone "show a fundamental

defect in the proceedings resulting in a complete miscarriage of justice."[67] Accordingly, the Court

denies his § 2255 motion on this ground.

---

[67] *Johnson*, 995 F. Supp. at 1261 (citing *Reed v. Farley*, 512 U.S. 339, 353-54 (1994)).

2. *Sufficiency of the evidence*

"Absent an intervening change in the law of a circuit, issues disposed of on direct appeal generally will not be considered on a collateral attack by a motion pursuant to § 2255."[68] Defendant challenged the sufficiency of the evidence supporting his conviction for possession of a firearm in furtherance of a drug-trafficking crime in his direct appeal to the Tenth Circuit. Defendant identifies "no new law applicable to [his conviction] that would inure to his benefit."[69] Rather, he simply rehashes the same arguments that the Tenth Circuit has already rejected.[70] Accordingly, as Defendant may not revisit issues previously argued before the Tenth Circuit, his request for relief is denied.

## D. Certificate of appealability

Appeal from a final decision on a motion to vacate, set aside, or correct a sentence under 28 U.S.C. § 2255 is not permitted unless a circuit or district judge issues a certificate of appealability in accordance with 28 U.S.C. § 2253(c).[71] The Court declines to grant Defendant a certificate of appealability in this case because he did not make a substantial showing that he was denied a constitutional right.[72] Defendant's arguments did not "raise issues that are debatable

---

[68] *United States v. Prichard*, 875 F.2d 789, 791 (10th Cir. 1989) (citation omitted); *see also United States v. James*, 660 F. App'x 607, 610 (10th Cir. 2016) ("The district court correctly held that he may not raise the issue again in a § 2255 motion.") (citation omitted); *United States v. Tucker*, 502 F. App'x 752, 755 (10th Cir. 2012) ("[W]e held that Mr. Tucker could not raise that argument in his § 2255 proceeding because it had been resolved on direct appeal.") (citation omitted).

[69] *Prichard*, 875 F.2d at 791.

[70] *See generally United States v. Ransom*, 691 F. App'x 504 (10th Cir. 2017).

[71] Fed. R. App. P. 22(b)(1).

[72] *See* 28 U.S.C. § 2253(c)(2).

among jurists, or that a court could resolve differently, or that deserve further proceedings."[73] Because neither Defendant's motion nor the record and files of the case support the existence of any evidence that lends merit to Defendant's claims, further review of Defendant's motion is unnecessary.

## IV.    Conclusion

Defendant's motion and the files and records in this case conclusively show that Defendant is not entitled to relief.   Defendant cannot show that the Court violated his right to self-representation, that he received ineffective assistance of counsel from either his trial or appellate counsel, that the Court erred in its instructions to the jury, or that the Government did not present the jury with sufficient evidence to convict Defendant of possession of a firearm in furtherance of a drug-trafficking crime.   Accordingly, the Court denies Defendant's motion to vacate (Doc. 215) and his addendum to his motion to vacate (Doc. 228).

**IT IS THEREFORE ORDERED** that Defendant's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Doc. 215) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Addendum to his Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Doc. 228) is **DENIED**.

---

[73] *United States v. Brown*, 993 F. Supp. 1338, 1343 (D. Kan. 1997); *see also United States v. Taylor*, 454 F.3d 1075, 1078 (10th Cir. 2006).

**IT IS SO ORDERED**.

Dated this 30th day of July, 2018.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE